Case 3-13-0418-WC, Georgina Munoz v. Workers' Compensation Commission, Buhler Home. May it please the Court. Good morning, or good afternoon, Your Honors. My name is Hania Somio and I represent the employee Georgina Munoz in this matter. This is a workers' compensation appeal coming from a workers' compensation commission. Georgina Munoz initially filed two applications for adjustment of claim, one alleging a repetitive trauma injury and one alleging a specific trauma injury. This case was arbitrated in front of Arbitrator Ackman. Arbitrator Ackman found for the specific trauma injury but denied the repetitive trauma injury. The sole issue on appeal today is whether the Illinois Workers' Compensation Commission committed an error at law in allowing the testimony of Dr. Cohen, which was in violation of the GEER doctrine. Just a brief summary of facts. We have an alleged date of repetitive trauma injury on her about January 8, 2010. The employee at the time of the accident was working for Buhler Home. She was working as a housekeeper at Buhler Home. She testified during the trial that as a housekeeper, she is responsible for cleaning, mopping, dusting, wiping tables, stocking. She is responsible for vacuuming. In a week, she would approximately clean about 27 apartments, ranging up to four to five apartments per day. She testified that approximately all aspects of her job, or actually all aspects of her job duties require use of her hands. She testified that she would work full-time at Buhler Home. She would work eight hours a day with two 15-minute breaks and a 30-minute lunch. As to the accident and date of manifestation, she testified that sometime in December of 2009, she started having issues with her hands. She went to her primary care physician, Dr. Krim. Dr. Krim, based on her symptoms, refers her friend EMG to Dr. Stradville. The EMG was done at about sometime around January of 2010. This was the first time the petitioner realized that she has carpal tunnel. The petitioner went back to Dr. Krim. Dr. Krim, based on the results of EMG, referred her to an orthopedic at Grapevine Orthopedic, Dr. Adamson. Shortly after that, the petitioner testified at the time of the arbitration that she notified her supervisor about these symptoms. She notified about the course of treatment Dr. Adamson is recommending, the medications she is on. She requested and asked for her supervisor to authorize further treatment, but her supervisor informed her that the authorization for treatment is denied. She did continue to take medication, gave a pension. She testified at the time of the arbitration, but did not follow through or seek any more treatment until about the second injury happened. Just to make sure I'm clear on the issues, if Dr. Cohen's causation opinion is properly allowed, then obviously the commission handed away the conflicting medical evidence. Correct. So you're contesting that as well as the decision to allow the report, or just the decision to allow the report? We are saying that the commission made an error to allow the deposition testimony of Dr. Cohen. Well, what did Dr. Cohen put in his report? Dr. Cohen, again, we are dealing with two injuries, specific trauma and repetitive trauma. Dr. Cohen had two reports, one as a result of the IME and one was just an addendum to the report. The repetitive trauma was the carpal tunnel, right? The repetitive trauma was the carpal tunnel. Did he issue an opinion and give a report that the job description and duties of the floor person for the employer did not constitute a risk factor for carpal tunnel? He did say that in his report. Is that a causation opinion? That is not a causation opinion. Why not? Because when you do a deposition of a physician or when you inquire a question from a physician regarding a repetitive trauma case, you will hear a physician testify there is either risk factors of carpal tunnel, risk factors being gender, age, whether a female is post-menopausal or pre-menopausal, thyroid, diabetes. Those are all risk factors. But when you ask the physician about causative factors, causative factors are the situation that can aggravate or cause repetitive trauma. Can something that's not a risk factor cause an event? Correct. It can? How does it do that? Well, risk factors, Your Honor, is not something that cause. Risk factors are factors that make you more vulnerable to developing a certain condition. They're not causes? Risk factors are not causes. Smoking is not a causation of heart disease? It certainly is a risk factor. I would agree then. Let's go a little bit further. There was a letter on July 15, 2011. I anticipate, but could be wrong, that Dr. Cohn will indicate that the enclosed job description did not completely constitute, cause, or aggravate the claimant's carpal tunnel syndrome. Now, you got that letter, didn't you? We did get that letter, but, Your Honor, under GEER, again, the GEER was put in place just to stop surprises. If, let's say, we get this letter, and the respondent attorney is under the impression that we have notice about the opinions that Dr. Cohn will be given, well, if you look at, they had, or we had the deposition of Dr. Rohde. In that same deposition, we provided the respondent with notice as to what Dr. Rohde would opine on. But the respondent attorney, and I've cited that in my brief, made an objection based on GEER and said, just because your doctor, or you say that your doctor will opine as to a certain thing, doesn't pierce his GEER. So, I mean, Well, I'm trying to settle this. If you indicated correctly, the purpose of this rule is to prevent the other side from springing surprise medical testimony here, okay? Now, if Cohn communicated in several different ways that, in his opinion, the activities of the claimant would not constitute a risk factor for carpal tunnel syndrome, when he shows up for the deposition, you're going to say we had no idea that he was going to deny causation when he denied it in the letter. Now, you're talking about, well, we don't know all of the things. We're going to fine-tune it a little bit here. Maybe there was certain information that should have been in there. But the basic critical issue, whether or not he was going to testify, there was no causation. It's there. Well, he goes in, in both of his reports. He goes in great length about the electrocution not being a cause for the carpal tunnel. But he doesn't address anything about the job duties. The only thing that he addressed about the job duties is the line that your Honor, you just stated. Well, why does he have to? I suggest to you humbly that the point is that you don't want to be surprised that the doctor is going to come there and give an opinion there's no causal connection between the work activities and the claimant's condition of LB. LB, okay? Here you have him clearly telling you he's not of that opinion. His opinion is there is no causal connection. Now, whether or not he weighed all of the activities and there was a flaw in his letter, you can't honestly say you were surprised by his deposition testimony, there was no causal connection. That was a complete surprise? Well, your Honor, surprise is a subjective term. You know, what constitutes surprise to maybe a seasoned attorney might be different than what constitutes surprise to a new attorney. Can I ask you a question? Sure. Your opponent cited a case called Kishwaukee Community Hospital versus the Industrial Commission. Can you tell me how you distinguish that case? At Kishwaukee we can distinguish because in Kishwaukee even the letter that was provided to the other party was vague. But it had opinion about causation that the doctor was going to opine on causation. Uh-huh. And you've got two letters in this case. You've got one letter that said, let's see if I can find it. One letter that said, I anticipate but couldn't be wrong that Dr. Cohn will indicate that the enclosed job description did not constitute cause or aggravate the claimant's carpal tunnel syndrome. You've got another letter that said that, as you are aware, Dr. Cohn's deposition testimony is coming up in the above matter. I impose for you a copy of the job description Dr. Cohn will testify to in the above matter. Please note, Dr. Cohn is going to review this doc description and I expect him to give an opinion that the claimant's condition of ill-being is not related to his work activity. How can you claim surprise on causation when you've got that? And again, Your Honor, I would say that surprise is a subjective term. If there is good... Well, shouldn't we look at it in terms of would a reasonable attorney be surprised? Yes, Your Honor. Or a reasonably competent attorney. I mean, it can't be subjective where you say, well, I should have known, but... But that's not what Garrett says, Your Honor. Garrett is still good law. Okay. And under here, the Kishwaukee Hospital case was decided in which the court said a letter from the other attorney stating that his IME doctor would testify as to causation is sufficient. Notice under here. You know, maybe we're dancing around something. Let me ask you a very blunt, pointed question. What part of his testimony surprised anybody? The fact that he was opining on causation about job duties. He didn't even mention in his report that he... Or what job duties did he actually review. If you look at his deposition, he talks about... Why does he have to review anything? Why doesn't he say, I'm going to testify, there's no causal connection. You're going to say you're surprised then because he didn't include all of these activities? But if you then go back and... We're not arguing manifest rate of the evidence here, but if you're looking back at manifest rate of the evidence, you want to know and you have to know what doctor... Or what did the doctor rely on in making his opinion. If the doctor is not giving in his report what he reviewed, how would the other party know what he reviewed? Isn't it Wilson versus Clark answers that question? It's your opportunity on cross-examination to find out what the basis of his opinion is. If he's qualified as an expert, he only has to give an opinion. No causation. He doesn't have to say another word. But then, your honor, what happens at that point where your... The doctor on cross-examination is talking about the X, Y, and Z documents that he reviewed and the other party had no idea that he did them. That's why your objection was placed in that place in the first place. But that's really not a problem here because you've got two letters from opposing counsel specifically saying what job description Dr. Cohen reviewed. And what his opinion was based on that job description. And that was all in advance of the deposition. See, here, let me just try and put this in. It's a nebulous term. What you seem to be saying, and the problem I see with what you're saying is, you've got a letter from the doctor saying he's going to give an opinion that denies a causal connection. So then I suppose every claimant's attorney could come in right before and say, I object to this because it's not detailed enough. He didn't include X, Y, and Z of all activities. Therefore, I'm surprised by this opinion. You can't be surprised of the basic opinion as he was consistent. He said there's no causal connection in the two letters. He said it in his deposition. So you can always pick apart the letter. But to say I was completely surprised by the denial of causal connection, that's a hard sell here. And I agree with you, Your Honor. And you probably see a lot of transcripts on cases where you would see Gehrer objection being raised. It's like a joke. Everybody raises Gehrer objection for everything that might or might not surprise. And I put that in my brief, too. Also, we need some parameters to set as to what constitutes surprise and what constitutes not surprise. Kishwaukee Hospital does say that Gehrer is not a bright line test. However, again, surprise is a subjective term. Do we have to put it out as a result of this case? Let me ask you another point of question since you're on this topic. If you had your druthers, what would our opinion say about surprise? Are we supposed to give some dictionary definition of surprise? What do you suggest? That would be up to you, Your Honor. What I would say again. You just kept on saying surprise is in the eye of the beholder, didn't you? It is. It's subjective, right? It is subjective. So how are we supposed to define it? Well, then, you know, maybe then Gehrer needs to be overturned because it leaves so much room. I mean, if Gehrer is good law, which it is because it is followed by other appellate court decision, commission just cannot ignore good law. But they didn't have to ignore Kishwaukee either. Kishwaukee is good law. And Kishwaukee is a very simple case. They sent a letter and told them what the guy was going to testify to. Said, you're not surprised now. And Kishwaukee relied partly on Gehrer. Kishwaukee followed Gehrer. There's no question of it. So again, if Gehrer is. . . And I guess in Kishwaukee they were trying to do it on case-by-case basis. But if, again, if Gehrer is not good law, if we are not going to establish an actual as to what constitutes surprise, then Gehrer needs to be overturned. You can't determine what constitutes surprise other than on a case-by-case basis. There's no way to draw a bright line test. And we can't do that. And maybe for that reason, Gehrer needs to be overturned. I wouldn't think about that. I mean, in this case, I don't think there's any doubt to anyone that you were well aware that this doctor was going to give an adverse causation opinion. I mean, either that or you didn't read the letters. I mean, he said what he said. They're not risk factors. That was his report. He's going to testify no causation. Two letters. Where's the surprise? Well, Judge, and again, I'm going to point out to the same thing that the Respondent Council did. I mean, it's a double standard then. If they are surprised, if they are claiming in that deposition, the treating doctor's deposition, that we are surprised because this doctor has asked to opine on a hypothetical job description question, then they should know that if their doctor, the IME doctor is not putting in his report that whether it's a causative factor versus a risk factor. We're not on them right now. We're on you. We're on your appeal. They didn't lose this argument. You did. So now the question is you've got to tell us what's wrong with their decision on the admission of Cohen's testimony after you got the notices that you got. Judge, again, I think that notice still wouldn't cover because in his report, he talks about Finish your thought, but I'm compelled to mention it. Just finish your thought, but then your time is up. In his report, he talks about the job duties were great enough to not be a risk factor. Risk factor, again, is taken very differently than a causative factor by the doctors who testify regarding causation on a repetitive trauma case. You'll have time on your phone. Thank you. Counselor, you may proceed. When are you taking this power? It's reverted back. That's a coup. Please proceed. Good afternoon. My name is Matt Grum here on behalf of the respondent of Buehler Home. First thing I want to do is I'd like to address a mistake in my own brief. The standard of review, which I had taken a further look at this morning in preparation for the argument, when dealing with an evidentiary ruling, I have put that DeNovo is not correct. It is, in fact, an abuse of discretion under the Holmbright case. Now, under that standard, which I would obviously request this court to utilize that argument or this issue under that standard, I don't feel as though Dr. Aikman or the commission abused their discretion as far as their deer ruling, and obviously that seems to be a threshold issue for today, so I'll focus most of my argument on that. Now, both counsel in my brief, we discussed the objection itself. I know that that was primarily the questions coming from this court here today, essentially that the job duties themselves were not disclosed. What did he actually review, Dr. Cohen? How often were these job duties that he's claiming to have looked at or have gotten a history from? And there was a failure to disclose whether the job duties in the repetitive trauma cases in particular was the cause of the condition itself. Now, we discussed the two reports. Now, the initial report, the initial reason that Dr. Cohen was involved was based on the electrocution incident. Now, later on down the road, we asked Dr. Cohen to look at additional information. He did not see her again. He simply got more records. That included not only the employer's job description, but I believe also a job description that had been filled out by the petitioner. That was the purpose of the second report. Now, admittedly, the report itself does not go into great detail, Dr. Cohen's second report. He simply states, and I won't belabor the point, that the job description did not show and the duties performed were not risk factors for the development of carpal tunnel syndrome. Now, admittedly, he does not come out and say the job duties did not cause or aggravate or exacerbate or accelerate or create a situation. So the question becomes, does he have to? He does not have to, in my opinion. Okay. If he's saying she was surprised, tell us why, objectively and reasonably, she couldn't be surprised. Objectively, if you take a look, we've discussed the letters. Both letters were sent for this very reason.  Dr. Wright and maybe the gear objections that he raised in Dr. Rohde's deposition did not want that to be a problem when Dr. Cohen was deposed. As such, both the letters that were sent from my office to the petitioner's office tried as best as we could to thoroughly disclose and inform the petitioner's counsel what he would be testifying to, specifically on the job duties. If you also take a look at the notice of deposition, which is deposition exhibit number one for Dr. Cohen's deposition, on the second page of that, it also specifically addresses the job duties of your client will be addressed and Dr. Cohen will be giving causation testimony in that regard as far as that goes. But it was clear that he was going to give an opinion that was going to go against the claimant on the issue of causation, right? Correct. But he's saying that it really was just some kind of a conclusionary thing with no other facts in it. So what's your take on that argument? Then I'll use the reasonable portion of the question you just asked a moment before. To claim surprise that a Section 12 examiner who is an upper extremity specialist is not going to give an opinion on causation as far as the development of carpal tunnel in a repetitive trauma comp case, I think is a little bit of a stretch to be quite frank. And that's my reasonable portion of that argument. Objectively, we have the notice of the deposition sent long in advance. There has been no allegation that the reports themselves were not sent long before the 48-hour rule to satisfy Section 12. We have both letters and then reasonably I think if you take a look at the thing as a whole, I mean, we hired Dr. Cohen to give opinions on the development of causation. That's what he did. That's what the purpose of Section 12 examiners are. Is there any prohibition against the type of supplementing that was done here, supplementing via a letter by an attorney to a report prepared by a physician? Is there any, I'm going to say, impropriety in terms of proceeding in that way? Because it seems like it could be subject to abuse. The party could be relying on the disclosed IME report and then within the time frame in advance of deposition allowed by rule, it could be supplemented to a point where it would be much, much different than the IME report was. Are there any constraints? To my knowledge, Your Honor, there are no case law constraints on the number of, first of all, independent medical examinations you can do. And I think you can certainly make an argument that, I guess, requesting or obtaining addendum reports could be abused. I don't think you can make that argument in this case, though. Once this case had developed, the repetitive trauma claim became more of an issue. As such, further information became available, that being we received our job description from our employer. The petitioner herself filled out a job description, which we obtained at the time of Dr. Rohde's deposition. We felt at that time that it was necessary for our physician to have a fair opportunity to look at this information and give his opinions in regards to the same. Could that have been abused? Certainly. I don't think you can make that argument in this particular instance. But to my knowledge, there is also no bar on the number of addendum reports. Well, isn't this exactly the procedure that was authorized in Kishwaukee? This is exactly what happened in Kishwaukee. Correct, Your Honor. If I remember correctly, the letters in Kishwaukee were argued by the individual trying to get out the evidence that they were way too broad. The letters in Kishwaukee basically just said, he's going to testify to causation. Well, in this case, we said he's going to testify as to the job duties and their causation. We were very specific as to what his testimony was going to be, which, in my opinion, goes beyond Kishwaukee. They're very broad in that instance. So the sending of a letter by an attorney to the other attorney is the procedure that Kishwaukee said gave you sufficient notice. Correct. Is the way you would testify. Correct. And under Kishwaukee, I mean, if this, for example, was a treating physician, or not Kishwaukee, under Holmbright, if this was a treating physician, I think the Holmbright case had held that the fact that maybe a physician had actually treated the condition put opposing counsel on notice that that doctor was going to be testifying as to the condition he had treated the individual for. And we went beyond that. We went beyond Kishwaukee. And I don't feel as though the Geer objection was an abuse of discretion as far as it's ruling. Beyond that, the decision itself, if Dr. Cohen's testimony is admitted into evidence and is allowed, I think, as I discussed in my brief, the commission was basically faced with a choice of medical opinions to choose, which is in their province. They chose Dr. Cohen's. Also, with the issue of accident, we had discussed, and the testimony is pretty clear, at trial as far as her job duties varying, the number of rooms she had cleaned, the size, the breaks, various things that she had. In sum, I would feel that the decision as far as accident is concerned by the arbitrator and the commission was appropriate and I'd ask that to be affirmed as well. And if there are any other questions. I don't believe there are. Thank you, counsel. Thank you. Counsel, you may reply. Your Honor, talking about surprise a little bit and talking about the letter that was sent to our office or that is usual practice that it goes to the other party before a deposition. At what point are attorneys allowed to ambush or surprise the other party? Where do we draw the line? Okay. So in this case, let's say the doctor said that job duties were a risk factor. Okay. Well, we go on the deposition, what if they have a video? What if they have the tools? What if the doctor testified that I've seen people operating these tools and that cannot be causative or be a risk factor for carpal tunnel? Or I've been personally to the job site and I've seen everything going on. I mean, where do we draw the line? At what point does it make it a surprise for the other party as to what the doctor is going to opine? I think, again, causation, just that a doctor is going to opine on causation, that's a very broad term. There could be various different things that a doctor can opine to. And, again, gear was put in place to cut the surprise element out of this discovery process. And either we need to or we are requesting that this commission finds that there was a gear violation or if there was no gear violation, then we need to have some sort of parameter as to what constitutes a surprise because surprise, again, is a subjective term. If there's any other questions, Your Honors. Therefore, Your Honor, for the reasons stated earlier, we respectfully request this Honorable Reviewing Court reverse the decision of the commission. Thank you, Counsel Bolt, for your arguments. This matter will be taken under advisement. This position shall issue the court a stand and brief recess.